## Mogel, Appellant, *v.* Berks County.

*County auditors—County treasurer—Prisons.*

Where the treasurer of Berks county has paid prison orders with county funds, neither the orders, nor a settlement of such items by the prison auditor, can bind the county auditors.

*Prison inspectors—Meals of.*

Prison inspectors while at the prison in the discharge of their official duties, have a right to be furnished with meals at the expense of the prison funds.

*Expenses of journey to inspect the Bertillon system—Act, May 7, 1889.*

The expenses of a journey of the inspectors of a prison to another county to examine the practical workings of the Bertillon system of measuring convicts under the act of May 7, 1889, P. L. 103, is properly charged to the prison funds.

*County buildings—Expenditures—Prison inspectors.*

Where a building is added to a county prison by the orders of the prison inspectors without authority from the county commissioners or the court of quarter sessions, and there is no bill or document to show the expenditures upon the building, a claim for its erection is properly disallowed by the county auditors.

Argued March 2, 1893. Appeal, No. 328, Jan. T., 1893, by plaintiff, David W. Mogel, from judgment of C. P. Berks

Co., May T., 1891, No. 60, on verdict for plaintiff for part of his claim. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Appeal by county treasurer from report of county auditors.

At the trial, before ERMENTROUT, P. J., the court reserved the following points:

"1. Order No. 97, for $217.86, disclosed upon its face that it was drawn upon the treasurer of the Berks county prison for Bertillon measuring instrument and expenses of the prison inspectors to Huntingdon; and as the law makes no provision for the payment of expenses of the prison inspectors, the treasurer was bound to take notice that the purpose of such expenditure was unauthorized by law, and he is not entitled to credit for the payment of so much of said order as was applied to such expenses, which the evidence showed was the sum of $177.86, and the verdict as to this item must be for the defendant.

. "2. Orders Nos. 46, 82 [et al.], aggregating $132, disclosed upon their face the fact that they were drawn upon the treasurer of the Berks county prison for inspectors' meals; and as the law makes no allowance for rations to the inspectors, the treasurer was bound to take notice that the purpose of such expenditure was unauthorized by law, and he is not entitled to credit therefor, and the verdict as to these items must be for the defendant.

"3. Orders Nos. 187, 186 [et al.], amounting in the aggregate to $3,750, [of which sum $505.27 were disallowed by the auditors as not being sustained by bills or accounts,] disclosed upon their face that they were drawn for the construction of a cesspool; and as the prison inspectors are not authorized by law to expend money for any such purpose, the treasurer was bound to take notice that the purpose for which such orders were drawn was not within the powers of the prison inspectors, and, therefore, not authorized by law, and he is not entitled to credit for the payment of said orders, and the verdict as to this item must be for the defendant.

"4. Section 9 of article 8 of the act relative to the Berks county prison and to discharged convicts, approved April 8, 1848, P. L. p. 399, by which the Berks county prison is gov-

erned, provides that 'for the funds necessary for keeping, furnishing and maintaining said prison, in conformity with the provisions of this act, the inspectors are hereby authorized to apply to the commissioners of said county, and if it shall appear to said commissioners of said county, or to the court of quarter sessions of the same, that the sum applied for is reasonable, and that the accounts of said inspectors are properly kept and adjusted, the commissioners of the said county of Berks shall forthwith draw an order on the treasurer of the said county in favor of the treasurer of said prison, for the use thereof, for such sum as shall be necessary to satisfy such demands.'

"None of the provisions of this section having been complied with and no warrant or order having been drawn by the county commissioners of the county of Berks on David W. Mogel, the county treasurer of said county, in favor of David W. Mogel, the treasurer of the Berks county prison, for the use thereof, the said county treasurer is not entitled to credit for the payment of any of the items amounting to          disallowed by the auditors, and the verdict as to these items must be in favor of the defendant.

" 5. The county commissioners not having issued a warrant or order to David W. Mogel, the county treasurer, for the payment of any part of the item          disallowed by the county auditors, and none having been shown, the county treasurer is not entitled to credit for this item disallowed by the county auditors, and the verdict must be for the defendant as to such item."

The court directed a verdict for plaintiff, subject to the opinion of the court upon the questions of law raised in the reserved points, with leave to enter judgment for the defendant non obstante veredicto, if the decision thereon be in favor of the defendant.

The court entered judgment for defendant non obstante veredicto, in an opinion by ERMENTROUT, P. J.

*Errors assigned* were (1–5) entry of judgment non obstante veredicto on reserved points, quoting points.

*Cyrus G. Derr, Israel H. Rothermel* and *John H. Rothermel* with him, for plaintiff.—The law constantly presumes that public officers charged with the performance of official duty

have not neglected the same, but have duly performed it at the proper time and in the proper manner: Mechem's Public Offices and Officers, § 579; Bank of United States v. Dandridge, 12 Wheat. 64; Broom's Legal Maxims, § 908; Schum v. Penna. R. R., 107 Pa. 12; Winlack v. Geist, 107 Pa. 301.

The report of the prison auditor, showing that he passed upon and allowed the items in question, is conclusive proof of their legality: Act of Feb. 18, 1871, P. L. 81; Luzerne Co. v. Whitaker, 100 Pa. 296; Blackmore v. Allegheny Co., 51 Pa. 163; Northampton Co. v. Herman, 119 Pa. 373.

It is a general intendment of law that everything is presumed rightly done unless the contrary be proved: King v. Catesby, 2 B. & C. 814; Phila., etc., R. R. v. Stimpson, 14 Peters, 458; Murphy v. Chase, 103 Pa. 262.

The building of the cesspool was authorized by act of April 8, 1848, providing for "keeping, furnishing and maintaining" the Berks county prison.

*Richmond L. Jones*, for appellee, cited, Merkel v. Berks Co., 81* Pa. 505; act of April 15, 1834, P. L. 539.

OPINION BY MR. JUSTICE WILLIAMS, March 27, 1893:

The act of April 8, 1848, furnishes the method by which the needs of the Berks county prison should be supplied. It commits the general oversight and control of the prison to a board of prison inspectors who are authorized to estimate each year the amount of money likely to be needed by them for the proper maintenance of the prison and its inmates. For this sum they are directed to apply to the county commissioners, whose duty it is to draw their order in favor of the board of inspectors, upon the county treasurer, for the money needed. This order is then deposited with the treasurer of the prison, who is also the county treasurer, and he credits himself as county treasurer, and charges himself as prison treasurer with the amount represented by it. In the settlement of his account as county treasurer the order is a voucher. In the settlement of his account as prison treasurer he must show the order of the board of prison inspectors to cover his disbursements. For some reason this simple method, so clearly laid down by the act of 1848, has been neglected for several years; and the ap-

pellant appears to have paid orders drawn on the prison treasurer out of the funds in his hands as county treasurer. The consequence is that to the extent to which such payments have been made he has no voucher that protects him. The order of the board of inspectors is not drawn on him as county treasurer, and the county auditors have a right to require him to show that the payment it represents has been made for a purpose to which the ·funds of the county might be lawfully applied. If he had appropriated county money to the payment of county orders, the orders would have been his vouchers. If he had paid prison orders out of prison funds, and charged them to his prison account, the auditor of the prison accounts would have had jurisdiction and his settlement of the account would have been conclusive upon all concerned. But so far as he paid prison orders with county funds neither the orders, nor a settlement of such items by the prison auditor, could bind the county auditors. It appears however that the auditors did not insist on rejecting the prison orders but required proof that they were drawn for proper purposes before allowing them. This was a fair and reasonable position, and it resulted in the rejection of three items only of the entire prison account. The auditors held that the expenditures covered by two of these items were without authority of law, and that the third was sustained by no bill or account rendered to the inspectors or other explanation. On an appeal to the court of common pleas the learned judge of that court took the same view of each of these items that had been taken by the auditors, and disallowed them. He gave an additional reason growing out of the manner in which the treasurer had paid prison orders out of county moneys, but as he did not apply this reason to the account but allowed a recovery for items that would have been excluded by such application, we feel at liberty to follow the example of the auditors and the learned judge of the court below, and consider these items upon their own facts.

The first of these is the item for meals furnished the board of inspectors while at the prison in the discharge of their official labors. This item was rejected for the reason that " there is no warrant in the law for using the funds of the prison for such purposes." If by this is meant that there is no distinct provision in the law for furnishing meals to the inspectors

when they are engaged in the performance of their important duties within the walls of the prison, it must be admitted that there is no such express provision. The same thing however may be said of the keepers and employees. We find no legislative direction that they shall be fed at the expense of the county of Berks, but they would be of much less value to the county if they were not. The nature of their duties, the necessity of their constant attendance, and the danger and loss that would result if they were not provided for within the inclosure, are such as to leave no doubt about the implied power of the board of inspectors to provide for them. But the inspectors are officers of the prison as truly as the warden and the turnkey. The law intrusts them with important powers and lays on them corresponding responsibilities. Their official duties require them to be in the prison buildings for hours together, and we have no doubt of their right to provide food for themselves at such times at the expense of the prison funds. Whether they are extravagant in their expenditures for this purpose is not the question, for extravagance is not alleged. The question is over their legal right to take food while necessarily employed in the prison, at the expense of the establishment under their care. We think this item should have been allowed.

The next item is expenses of a journey to inspect, and become familiar with the use of, a machine they were authorized to buy to enable the warden to make a registry of all convicts under his care. In making this registry, the system of measurements and description known as the Bertillon is coming into general use. The act of 1889 requires that the registry shall be made, and authorizes the adoption of the Bertillon system. One of these instruments was in use in the state prison at Huntingdon. The inspectors took the warden to Huntingdon that they might be the better able to judge of the propriety of adopting it in the prison under their care. It is possible that this expense might have been saved, as suggested, by correspondence with the makers of the machine and securing the presence of an experienced salesman who would explain its use and ply his powers of persuasion, at the same time, at the Berks county prison; but this would not have given what they most wanted, viz., the impartial judgment of disinterested persons who had

become familiar with both the Bertillon system and the machine. We think this item should have been allowed. The authority to examine and investigate so far as may be necessary to form an intelligent judgment upon the utility and value of the machine they were authorized to buy, and the system they were authorized to adopt, is incidental to the power conferred; and if it was prudently exercised, as it seems to have been in this case, the expenses necessarily incurred are legitimate.

The third item is an order drawn for part of the cost of an outbuilding or improvement that was rejected for two reasons: The want of any bill rendered or other document to support it, and the want of power in the inspectors to make the expenditure. These are sufficient reasons for rejecting it. The plaintiff cannot recover therefore for this item, amounting to five hundred and five dollars and twenty-seven cents ($505.27), but judgment is now entered in favor of the plaintiff for all the other items, amounting together to fifteen hundred sixty-four dollars and sixty-eight cents ($1,564.68), with interest from the date of the verdict, May 3, 1892, and costs.